UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

**FRANCES C. LANGE**,                                    Case No. 6:15-cv-00596-KI

                  Plaintiff,                              OPINION AND ORDER

   v.

**CAROLYN W. COLVIN, Acting
Commissioner of Social Security**,

                  Defendant.


      Katherine L. Eitenmiller
      Mark A. Manning
      Harder, Wells, Baron & Manning P.C.
      474 Willamette, Ste 200
      Eugene, OR 97401

            Attorneys for Plaintiff

      Billy J. Williams
      United States Attorney
      District of Oregon


Page 1 - OPINION AND ORDER

Janice E. Hebert
Assistant United States Attorney
1000 SW Third Ave., Ste. 600
Portland, OR 97204-2902

John C. Lamont
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Ste. 2900 M/S 221A
Seattle, WA 98104-7075

   Attorneys for Defendant

KING, Judge:

  Plaintiff Frances C. Lange brings this action pursuant to section 205(g) of the Social

Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

Commissioner denying plaintiff's application for disability insurance benefits ("DIB") and

supplemental security income benefits ("SSI").  I affirm the decision of the Commissioner.

## BACKGROUND

  On October 1, 2009, Lange filed applications for DIB, alleging disability as of July 23,

2009, and SSI, alleging disability as of November 15, 2005.  The applications were denied

initially and upon reconsideration.  After a timely request for a hearing, and without

representation, Lange appeared and testified before an Administrative Law Judge ("ALJ") on

December 8, 2011.  The Appeals Council remanded the ALJ's decision and Lange appeared for a

second hearing on April 12, 2013, again without representation.

  On July 11, 2013, the ALJ issued a decision finding Lange was not disabled within the

meaning of the Act and therefore not entitled to benefits.  This decision became the final decision

of the Commissioner when the Appeals Council declined to review the decision of the ALJ on

February 10, 2015.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits

to people who have contributed to the Social Security program and who suffer from a physical or

mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security

income benefits may be available to individuals who are age 65 or over, blind, or disabled, but

who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to

cause death or to last for a continuous period of at least twelve months.  42 U.S.C.

§§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will be determined to be disabled only if his

physical or mental impairments are of such severity that he is not only unable to do his previous

work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A) and

1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for

determining if a person is eligible for either DIB or SSI due to disability.  The evaluation is

carried out by the ALJ.  The claimant has the burden of proof on the first four steps.  *Parra v.

Astrue*, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520 and 416.920.  First, the ALJ

determines whether the claimant is engaged in "substantial gainful activity."  20 C.F.R.

§§ 404.1520(b) and 416.920(b). If the claimant is engaged in such activity, disability benefits are

denied. Otherwise, the ALJ proceeds to step two and determines whether the claimant has a

medically severe impairment or combination of impairments. A severe impairment is one

"which significantly limits [the claimant's] physical or mental ability to do basic work

activities[.]" 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe

impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the

impairment is equivalent to one of a number of listed impairments that the Commissioner

acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d)

and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is

conclusively presumed to be disabled. If the impairment is not one that is presumed to be

disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the

claimant from performing work which the claimant performed in the past. If the claimant is able

to perform work she performed in the past, a finding of "not disabled" is made and disability

benefits are denied. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the

fifth and final step to determine if the claimant can perform other work in the national economy

in light of his age, education, and work experience. The burden shifts to the Commissioner to

show what gainful work activities are within the claimant's capabilities. *Parra*, 481 F.3d at 746.

The claimant is entitled to disability benefits only if he is not able to perform other work. 20

C.F.R. §§ 404.1520(g) and 416.920(g).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less than a preponderance. *Id.* (internal quotation omitted). The court must uphold the ALJ's findings if they "are supported by inferences reasonably drawn from the record[,]" even if the evidence is susceptible to multiple rational interpretations. *Id.*

## THE ALJ'S DECISION

According to the ALJ, Lange's severe impairments are: fibromyalgia, cervical degenerative disc disease, and chondromalacia of the left knee. The ALJ concluded these impairments, either singly or in combination, did not meet or medically equal the requirements of any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. Given these impairments, the ALJ determined Lange's residual functional capacity ("RFC") allowed her to perform light work. That is, she can lift 20 pounds occasionally and 10 pounds frequently, sit or stand and walk six hours each for a combined total of eight hours. She cannot climb ladders, ropes, or scaffolds. She is able to occasionally climb ramps and stairs. She is able to frequently crouch and stoop. She is able to occasionally kneel and crawl. She should have no exposure to unprotected heights or moving machinery. She cannot be exposed to high noise environments, defined as no more than what is in an average office environment. Given this RFC, the ALJ found Lange could perform her past work of front desk clerk and restaurant manager.

Page 5 - OPINION AND ORDER

## FACTS

Lange, who was 58 years old at the time of the first hearing, has a high school degree and a work history involving a multitude of jobs including restaurant service and management work, gas station attendant, deli clerk, hotel clerk, and radio station announcer.  At the time of the first hearing, Lange had been working part-time as a library aide.  She explained she had so many jobs because she was moving to different places and she was trying to find less physical work due to pain in her wrists and getting older.  Also, if she did not like her boss at one restaurant she could move down the street.

Disability Determination Services ("DDS") sent her to Larry Maukonen, M.D., for an examination on August 13, 2008.  Lange complained of pain in her muscles and joints, beginning in 2004.  Upon examination, Lange displayed pain and stiffness in multiple joints, but her strength was 5/5.  Dr. Maukonen could not offer an opinion as to the source of her joint pain and stiffness, but he did assess her functional limitations.  Specifically, he limited her lifting to 10 pounds occasionally and less than 10 pounds frequently, and her sitting to less than six hours in an eight-hour day, and her standing to at least two hours in an eight-hour day.

Lange reported to the Coos County Mental Health Department for mental health treatment in September 2009.  She reported past suicide attempts and seeing vague visual images of wispy smoke that she thought might be ghosts, spirits or demons.  Lange was scheduled to meet with Nancy Strain, L.C.S.W., in three weeks' time, but there is no indication she did.

Lange established primary care with Carlos Suarez, M.D., of the North Bend Medical Center, in September 2009.  Dr. Suarez assessed Lange with anxiety (treated with Vistaril), multiple joint pain, fibromyalgia, and obstructive sleep apnea.

Lange reported to the emergency room a few weeks later complaining of chest pain under her shoulder blades radiating into her arm.  Dr. Suarez treated her with aspirin and nitroglycerin, as well as Toradol and Pepcid, without much improvement.  He also treated her for dehydration. An electrocardiogram and chest x-ray were normal.  She took Vistaril for her anxiety before she left, and Dr. Suarez opined that her anxiety "probably accounts for many of her symptoms."  Tr. 492.

Dr. Suarez addressed a lump on Lange's neck and her pelvic pain in October.  He also sent her for a formal sleep test.

In November, Dr. Suarez referred Lange to Anita Goel, M.D., for a rheumatologic consultation.  Lange told Dr. Goel about "intense hip pain" for at least ten years, which had worsened the past year.  She also complained of fatigue.  Upon examination, Lange demonstrated "marked diffuse soft tissue tenderness with multiple tender trigger points.  Decreased ROM of her C spine.  Otherwise normal joint exam."  Tr. 470.  Dr. Goel recommended a healthy diet, an exercise program, discontinuing smoking, and avoiding stressors.  She also mentioned muscle relaxants and antidepressants as being helpful options.

Lange's colonoscopy also in November reflected she was "in good health."  Tr. 477.

James M. Wahl, Ph.D., examined Lange at the request of DDS in January 2010.  Dr. Wahl understood Lange was applying for disability due to panic attacks and chronic pain.  He reviewed Dr. Suarez's notes from September and October 2009, and the function report she completed.  When Lange experienced a panic attack, which was always brought on by stress, she drove to the emergency room and parked in the parking lot until she felt better.  She experienced attacks at home and in public, they lasted about three hours, and many occurred at night.  Dr.

Wahl diagnosed her with panic disorder without agoraphobia; major depressive disorder, recurrent, moderate; fibromyalgia, osteoporosis; and noted chronic pain, history of childhood abuse, inadequate income, inadequate access to health care. He assigned a global assessment of functioning ("GAF") of 60.[1]

Returning to Dr. Suarez, Lange agreed to try Cymbalta to treat her fibromyalgia.

In March 2010, Lange appeared in the emergency room complaining of shoulder pain. She was diagnosed with a right rotator cuff injury. She returned to the emergency room in June and was diagnosed with sciatica. She was instructed to try a topical pain patch and her usual pain medication.

Douglas G. Crane, M.D., also of the North Bend Medical Center, referred Lange back to Strain at the Coos County Mental Health Department in July 2010. Lange sought counseling about her fear over living alone. Lange appeared friendly and cooperative, relaxed, and with normal speech and coherent thoughts. She reported feeling depressed, anxious, angry, and irritable. She did not want to take an antidepressant. Strain diagnosed PTSD provisionally. Strain offered to meet with Lange over three to six therapy sessions. Lange arrived for her first

---

[1]The GAF is a scale from 1-100, in ten point increments, that is used by clinicians to determine the individual's overall functioning. A GAF of 51 to 60 means "**Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (e.g., few friends, conflicts with peers or co-workers)." The American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. 2000) ("DSM-IV"). A GAF of 61 to 70 means "**Some mild symptoms** (e.g., depressed mood and mild insomnia) **OR some difficulty in social, occupational, or school functioning** (e.g., occasional truancy, or theft within the household), **but generally functioning pretty well, has some meaningful interpersonal relationships.**" *Id.* The most recent edition of the DSM eliminated the GAF scale. *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2012).

and second follow-up appointments, but did not return to Strain until 2013 despite multiple outreach letters.

Dr. Crane also wrote a number of letters on Lange's behalf to assist her in obtaining housing. He wrote two in August 2010 reporting her "chronic orthopedic problems" and "sciatic nerve pain" and asking for Section 8 housing in one letter, and handicap travel on Amtrak in another. Tr. 369, 370.

In August, Lange sought care for her shoulder pain and Dr. Crane referred her to the South Coast Orthopaedic Associates. Lange reported pain with movement of the right arm, difficulty sleeping, pain in elevating the arm, and intermittent numbness in her fingers. Harry Sirounian, D.O., recommended an NSAID. Just two weeks later, Lange reported ½ pill a day "helped her a lot. She states the shoulder pain has decreased considerably. In addition, it has helped all of her other joints, including her knee and lower back. Her activity status has improved." Tr. 589. Examination of her shoulder revealed "good motion, no crepitus and no tenderness." Tr. 590. Dr. Sirounian recommended physical therapy, home exercises, and NSAID use.

In January 2011, Dr. Crane again referred Lange to the South Coast Orthopaedic Associates to examine Lange's knees. Douglas Abbott, M.D. examined her, noting she had fibromyalgia, was not taking regular anti-inflammatory medications but was taking occasional Flexeril and about one-half a pain pill occasionally for her knees. In February, Dr. Abbott noted full weight-bearing gait, excellent motion of her knee with normal stability, although the left knee was tender. An MRI of her left knee revealed no tear, but "slight effusion to the knee joints

and perhaps some articular cartilage change at the femoral trochlea," and an otherwise age appropriate knee.  Tr. 572.

Lange returned to the orthopaedic clinic in April complaining of neck pain and radiculopathy for the past four or five months.  She reported difficulty holding her head up and handling objects.  She demonstrated functional range of motion and 5/5 strength.  She was scheduled for an MRI.  A review of her C-spine MRI in May 2011 revealed an area consistent with a foraminal disc herniation and nerve impingement.  Surgery was not recommended, but a cervical epidural steroid injection was discussed.

In October, Dr. Crane wrote a letter on Lange's behalf asking for a different unit in the apartment complex with a "bit larger bathroom."  Tr. 602.  He explained Lange's panic disorder makes "the tight area in her bathroom quite constrictive for her and is causing emotional distress."  *Id.*

In May 2012, Dr. Crane wrote that Lange should be able to move to Medford to live closer to her son, due to her panic disorder and fear of being alone, and he asked for social service assistance.  He reiterated this request in a letter dated November 2012.

In January 2013, Lange again sought mental health care from the Coos County Mental Health Department.  She reported worsening fear of living alone, as well as agoraphobia and depression.  Strain met with Lange again and diagnosed PTSD and panic disorder with agoraphobia.  Strain reported Lange was friendly, cooperative, relaxed, without abnormal motor movements.  Her affect was sad.  She did not want to take an antidepressant.  Strain thought Lange's prognosis was good, and she recommended up to three therapy sessions and more if necessary.  Lange met with Syd Wiesel, L.C.S.W., on three occasions in March and April.  Lange

reported improvement with exercise, deep breathing and using a mantra to reduce anxiety. She also stopped watching violent television shows and was sleeping better. At her last session, she reported moving to Coos Bay and asked to transfer to Strain; she felt high anxiety with the possibility of a melanoma diagnosis. She described the calming techniques as helpful.

## DISCUSSION

Lange challenges the following parts of the ALJ's decision: improper treatment of the medical evidence, failure to consider Lange's mental impairments as "severe," improper credibility assessment, failure to order a consultative psychological evaluation, and inadequate development of the record.

I.    Medical Evidence

Lange questions the ALJ's treatment of the following medical opinions: Dr. Maukonen, Dr. Wahl, Dr. Suarez, and Dr. Crane. The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. *Id.* (treating physician); *Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician). Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Orn*, 495 F.3d at 632; *Widmark*, 454 F.3d at 1066. The opinion of a nonexamining physician, by

itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. *Widmark*, 454 F.3d at 1066 n.2.

Since the opinions of Drs. Maukonen, Wahl, Suarez and Crane were contradicted by the opinions of state agency consultants Kordell Kennemer, Psy.D., Neal Berner, M.D., Joshua Boyd, Psy.D., and Sharon Eder, M.D., the ALJ was required to provide specific and legitimate reasons for giving the examining and treating physician opinions the weight she did.

A.    Dr. Maukonen

Dr. Maukonen limited Lange to lifting 10 pounds occasionally and less than 10 pounds frequently, and sitting to less than six hours in an eight-hour day, and standing at least two hours in an eight-hour day.

The ALJ gave little weight to Dr. Maukonen's opinion because the doctor conceded he had not reviewed any records and could not determine the cause of Lange's complaints. The ALJ commented that just as the doctor could not opine as to the cause of her symptoms, his assessment of her limitations appeared to be based on Lange's reports.

Lange points out Dr. Maukonen made objective findings, such as her slow finger-to-nose pointing, fine movements, rapid alternating movements, and foot tapping, and stiff rising from a seated position. While these are behaviors Dr. Maukonen observed, there is no objective support for the lifting limitations he imposed (Lange displayed 5/5 strength), the sitting limitations he imposed, or the noise and vibration limitations (her sensory testing was normal). When consulting physicians Dr. Eder and Dr. Berner reviewed Dr. Maukonen's report, they too concluded he must have relied on Lange's complaints rather than on objective evidence.

Accordingly, the ALJ gave specific and legitimate reasons supported by substantial evidence to give little weight to Dr. Maukonen's opinion.

      B.    <u>Dr. Wahl</u>

Dr. Wahl concluded Lange could "understand and remember at least moderately complex instructions, but her results also suggest that her ability to sustain concentration and attention and persist at work tasks is suspect given her chronic pain and various medical conditions." Tr. 510. The doctor predicted Lange's panic attacks and depression would continue indefinitely as she had not utilized treatment therapies. He thought she displayed good social skills and that her PTSD would not inhibit her ability to function at work. He noted she showed no signs of clinical anxiety, she "displayed fairly good social skills" and that her IQ was likely in the average range.

The ALJ dismissed the GAF of 60, suggesting the score represented Lange's chronic pain, history of child abuse, inadequate income, and inadequate access to health care as opposed to reflecting her psychological state. She also noted Dr. Wahl thought Lange would have no trouble understanding and remembering moderately complex instructions, and that any limitations in concentration, attention, and persistence were due to pain and other medical conditions. However, the ALJ further found the extent of Lange's pain was not supported by the evidence.

Lange argues the ALJ misunderstood the GAF scale, asserting the DSM specifically directs practitioners not to include "impairment in functioning due to physical (or environmental) limitations," and contending there is no reason Dr. Wahl would have considered inapplicable factors when instructed not to. <u>See</u> DSM-IV-TR at 34. The Commissioner does not respond to

this argument, and there is no support for the ALJ's conclusion that Dr. Wahl incorrectly considered these physical and environmental factors in assessing the GAF.

Nevertheless, contrary to Lange's assertion, I see no mischaracterization or misunderstanding in the ALJ's representation of Dr. Wahl's opinion. Dr. Wahl opined that any limitations in concentration, attention and persistence were attributable to Lange's chronic pain and medical problems, as opposed to psychological impairments, and the ALJ properly questioned the severity and effect of Lange's chronic pain later in her opinion. Contrary to Lange's assertion, Dr. Wahl simply did not attribute any concentration and attention problems to anxiety or depression. As a result, the ALJ's treatment of Dr. Wahl's opinion was not error.

C.    Dr. Suarez

Dr. Suarez treated Lange from September 2009 to January 2010. Lange contends the ALJ erred by not addressing Dr. Suarez's note that Lange's anxiety "probably accounts for many of her symptoms." Tr. 492. Lange suggests the note is evidence Dr. Suarez believed her mental and physical problems are related.

The Commissioner points out the ALJ need not address every piece of evidence, and especially need not address evidence which is not probative. She contends Dr. Suarez's statement is not an "opinion" within the meaning of the regulations. *See* 20 C.F.R. § 404.1513(c)(1), (2); 416.913(c)(1), (2); *see also* SSR 96-5p, 1996 WL 374183, at *4 (July 2, 1996) (opinion is about "an individual's physical or mental abilities to perform work-related activities on a sustained basis"). Further, two of the consulting physicians did consider Dr. Suarez's note and concluded Lange could perform light work. Tr. 533, 568. I agree. Dr. Suarez's statement is not an opinion about Lange's functional limitations affecting her ability to

work.  While it is evidence that Lange experienced chest pain which may have been attributable

to anxiety on one occasion, consideration of the note would not have changed the ALJ's opinion

in any of the three functional areas related to severity of Lange's mental impairments, nor would

it have changed the RFC.

       D.     <u>Dr. Crane</u>

Lange contends the ALJ was required to give controlling weight to treating physician Dr.

Crane's multiple opinions about Lange's disability in relation to her housing.  The ALJ found the

opinions not persuasive as that level of inability to function was not reflected in the record or in

Dr. Crane's notes.  Additionally, the finding of disability is a determination left to the

Commissioner.  Lange contends the record reflects, just as the ALJ found, "intermittent

complaints of anxiety or panic" and that Dr. Crane's opinions were not on the issue of disability,

per se, but rather an assessment of her housing needs.

I agree with the ALJ's reasons for finding Dr. Crane's letters not entitled to any weight.

Leaving aside the argument that Dr. Crane's opinions contain a legal conclusion on disability,

which is generally left to the ALJ, they are entirely devoid of any reasoning to support them.

Further, her housing needs are not probative of any functional limitations to working.  An ALJ is

not required to accept the opinion of a physician, even a treating physician, if the opinion is

"conclusory, brief, and unsupported by the record as a whole[.]"  *Batson v. Comm'r of Soc. Sec.*

*Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  The record supports the ALJ's conclusion that

Lange's mental impairments did not affect her ability to work.

II.    Severe Impairments

Lange contends the ALJ should have treated her mental impairments as severe.  In order to constitute a "severe" impairment, the impairment must have "more than a minimal effect on the person's physical or mental ability(ies) to perform basic work activities."  SSR 85-28, 1985 WL 56856, at *3 (January 1, 1985); *see also* SSR 96-3p, 1996 WL 374181, at *1 (July 2, 1996) (restating policy that "an impairment(s) is considered 'not severe' if it is a slight abnormality(ies) that causes no more than minimal limitation in the individual's ability to function independently, appropriately, and effectively in an age-appropriate manner.").  Nevertheless, the threshold at step two is a low one.  It is a "de minimis screening device [used] to dispose of groundless claims."  *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (internal quotation omitted).

The ALJ's finding that Lange did not have a severe mental impairment is supported by substantial evidence in the record.  The ALJ closely examined the evidence of mental impairments, accorded significant weight to the opinions of the reviewing psychological consultants, rejected Dr. Crane's opinion, and properly characterized Dr. Wahl's examination. Finally, the ALJ correctly analyzed the four "paragraph B" criteria which yielded conclusions of only mild impairments in the three functional areas, with no episodes of decompensation.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C) (severity of a mental impairment is measured by "assess[ing] functional limitations using the four criteria in paragraph B of the listings: [a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation").  Substantial evidence supports the ALJ's analysis.

III.    Lange's Credibility

Lange contends the ALJ failed to properly assess her credibility.  The ALJ noted no

treating source had assessed Lange's abilities, her activities of daily living were consistent with

light work, she had worked since she began experiencing anxiety-related symptoms in 1994, she

appeared relaxed, friendly and cooperative to all of her doctors despite reports of anxiety, and she

had sought care for her symptoms only sporadically.  The ALJ also noted that "no treating or

examining source has set forth restrictions supporting a finding of disability[.]"  Tr. 27.

When deciding whether to accept the subjective symptom testimony of a claimant, the

ALJ must perform a two-stage analysis.  In the first stage, the claimant must produce objective

medical evidence of one or more impairments which could reasonably be expected to produce

some degree of symptom.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  The

claimant is not required to show that the impairment could reasonably be expected to cause the

severity of the symptom, but only to show that it could reasonably have caused some degree of

the symptom.  In the second stage of the analysis, the ALJ must assess the credibility of the

claimant's testimony regarding the severity of the symptoms.  *Id.*  The ALJ "must specifically

identify the testimony she or he finds not to be credible and must explain what evidence

undermines the testimony."  *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

General findings are insufficient to support an adverse credibility determination and the ALJ

must rely on substantial evidence.  *Id.*  "[U]nless an ALJ makes a finding of malingering based

on affirmative evidence thereof, he or she may only find an applicant not credible by making

specific findings as to credibility and stating clear and convincing reasons for each."  *Robbins v.*

*Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Page 17 - OPINION AND ORDER

As an initial matter, I do not rely on Lange's testimony regarding her mental impairments. Although she testified she had no mental health problems that would affect her ability to work, her testimony is ambiguous in a context where Lange subsequently asked the ALJ whether she had Lange's mental health records.

Lange does not question the ALJ's reliance on her daily activities.  Instead, Lange contends the ALJ erred in rejecting her pain testimony, when she produced a diagnosis which could cause some degree of pain.  She also takes issue with the ALJ's statement that no treating or *examining* physician set out disabling-level restrictions.  To the contrary, she points out Dr. Maukonen limited her to sedentary work and that, as a person "closely approaching advanced age" without any identifiable transferable skills, she is deemed disabled under the grids.[2]  Finally, she argues her failure to seek treatment is a legally invalid reason to question the existence and severity of her mental impairments.  Tr. 98, 428, 510 (lacked resources for mental health treatment); *Garrison v. Colvin*, 759 F.3d 995, 1018 n.24 ("questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation"); *Orn*, 495 F.3d at 638 (not an appropriate factor when claimant cannot afford treatment).

Although the ALJ cannot reject subjective pain testimony solely because it was not fully corroborated by objective medical evidence, medical evidence is still a relevant factor in determining the severity of the pain and its disabling effects.  *Rollins v. Massanari*, 261 F.3d 853,

---

[2]The Medical Vocational Guidelines, also known as "the grids" are used to determine if substantial gainful work exists for claimants with substantially uniform levels of impairment. When the grids do not adequately take into account a claimant's abilities and limitations, however, they may be used only as a framework and a vocational expert must be consulted. *Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002).

857 (9th Cir. 2001). Here, Lange complained of spasms over her whole body and extreme pain that never stopped. Yet, objective testing revealed full strength, good weight bearing gait, normal range of motion, and the recommended treatment was limited to NSAIDs and perhaps a cortisone injection.

Lange is correct to question whether the ALJ's reliance on her lack of mental health treatment was appropriate as the ALJ should carefully examine the reasons for a claimant's failure to obtain treatment. Here, however, the ALJ's conclusion was appropriate and was supported by substantial evidence. Lange was offered mental health treatment and she failed to follow through with it. *Cf. Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (internal quotation omitted) (claimant one of millions who did not seek treatment for depression until late). There is no evidence any impairment stopped Lange from seeking treatment, or that she was unaware of her mental health problem in the first place. Further, despite reporting daily anxiety attacks, she regularly presented to her medical providers without any signs of anxiety. Finally, there is no evidence she was denied mental health treatment because she could not afford it.

With respect to the ALJ's statement that no treating or examining source had identified restrictions supporting a finding of disability, Lange is technically correct. Nevertheless, even Dr. Maukonen opined Lange was capable of performing sedentary work. The ALJ simply failed to consider such a finding in the context of a person Lange's age and skill level. Even if the ALJ slightly misrepresented the state of the opinion evidence, the fact that the ALJ improperly considered some reasons for finding plaintiff's credibility undermined does not mean that the ALJ's entire credibility assessment is improper. *Batson*, 359 F.3d at 1197.

On the whole, the ALJ's conclusions are supported by substantial evidence and I decline to "engage in second guessing." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation omitted).

IV.    <u>Supplement Record</u>

Lange insists the ALJ should have obtained a second consultative examination to assess her mental impairments, when she was unable to afford treatment. She points out Dr. Wahl thought her depression and anxiety would continue without treatment. In addition, she underscores she was unrepresented at the hearing and suffered from mental health impairments, imposing on the ALJ a heightened duty to develop the record. She contends further inquiry into her suicide attempts, panic attacks, depression, and PTSD, which affected her memory and mood, should have been investigated further.

A Social Security ALJ has an "independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal quotation omitted). The duty is heightened if a claimant is unrepresented or is mentally ill and cannot protect his own interests. The ALJ must supplement the record if: (1) there is ambiguous evidence; (2) the ALJ finds that the record is inadequate; or (3) the ALJ relies on an expert's conclusion that the evidence is ambiguous. *Webb*, 433 F.3d at 687. The supplementation can include subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow the record to be supplemented. *Tonapetyan*, 242 F.3d at 1150.

While I disagree with the Commissioner that Lange's testimony, when read in context, is persuasive evidence of a lack of mental impairment, I nevertheless disagree with Lange that the

ALJ failed to fully develop the record or that a further psychological consultation was necessary. Dr. Wahl completed his examination in 2010, in which he concluded any limitations were due to physical complaints as opposed to psychological problems, and there was no evidence Lange's mental health dramatically changed in the intervening years. Additionally, no examining or treating physician identified additional information that would be necessary to properly assess Lange's functioning.

In sum, the ALJ did not err.

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards. For these reasons, the court affirms the decision of the Commissioner.

IT IS SO ORDERED.

DATED this _____14th_____ day of March, 2016.


 /s/ Garr M. King
Garr M. King
United States District Judge